BLUE MOUNTAIN MUSHROOM CO., INC. and Blue Ball National Bank Plaintiffs

v.

MONTEREY MUSHROOM, INC., Defendant.

No. 00–CV–4915.

United States District Court, E.D. Pennsylvania.

Sept. 5, 2002.

Matthew H. Haverstick, Barley, Snyder, Senft & Cohen, Lancaster, PA, John E. Muir, Kozloff Stoudt, Wyomissing, PA, Rees Griffiths, Barley Snyder Senft & Cohen, LLC, York, PA, George J. Shoop, Barley Snyder Senft & Cohen, Reading, PA, for plaintiffs.

James J. Rodgers, Dilworth, Paxson, LLP, Philadelphia, PA, Thomas S. Biemer, Dilworth Paxson LLP, Philadelphia, PA, Donald B. Lynn, Jr., Dilworth Paxson, LLP, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Presently before this court is Defendant's Motion for Reconsideration filed on August 6, 2002, requesting this court to reconsider our Memorandum and Order dated July 25, 2002. Plaintiffs filed a Response on August 20, 2002. Also before us is Defendant's Motion for Summary Judgment filed on July 14, 2002, and Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment filed on

July 18, 2002. For reasons set forth below, we will grant Defendant's Motion for Reconsideration, and vacate our July 25, 2002 Order and withdraw the accompanying Memorandum. This court will grant Summary Judgment to Defendant in part. Defendant's motion for summary judgment concerning Plaintiffs' promissory estoppel, fraud (intentional misrepresentation), negligent misrepresentation, and breach of an implied covenant of good faith and fair dealing claims will be granted and these claims will be dismissed.

## BACKGROUND

This case arises out of a default on an agreement to purchase Plaintiff Blue Mountain Mushroom Co. ("Blue Mountain"). In 1999, Blue Mountain defaulted on its loan obligation to co-Plaintiff Blue Ball National Bank ("BBNB") and was forced to declare bankruptcy. Subsequently, BBNB suggested Blue Mountain find a purchaser for all its assets. On August 3, 2000, Blue Mountain, acting as Debtor–in–Possession, entered into a final Agreement of Sale and Purchase ("the Agreement") with Defendant Monterey Mushrooms, Inc. ("Monterey") for the sale of substantially all of Blue Mountain's assets to Monterey. The Bankruptcy Court approved the purchase on August 3, 2000. Between August 3 and August 28, 2000, Monterey attempted to acquire the necessary funds to complete the purchase. Seven days after the Agreement's closing date, on August 28, 2000, Monterey advised Blue Mountain that it was defaulting on its obligation under the Agreement to purchase Blue Mountain. Pursuant to the Agreement, Blue Mountain retained the $50,000.00 deposit (Agreement ¶ 22.2). Defendant Monterey alleges that the provisions of the agreement with Blue Mountain called for the retention of the deposit as liquidated damages and constituted the sole remedy for defaulting on its obligation

to purchase, thus barring further claims. Plaintiff Blue Mountain Mushroom Company, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania. Co–Plaintiff Blue Ball National Bank is a bank operating in Pennsylvania, and Defendant Monterey Mushroom, Inc., is a Californian corporation with its principal place of business in Watsonville, California. We have jurisdiction in this case founded upon 28 U.S.C. § 1334 (diversity of citizenship).

## DISCUSSION

I. Motion for Reconsideration Standard

 A motions for reconsideration may be filed under local Rule 7.1(g) and FED. R. CIV. P. 59(e): "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after the entry of the judgment." The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Generally, a motion for reconsideration will only be granted on one of the following three grounds: "(1) there has been an intervening change in controlling law; (2) new evidence, which was not previously available, has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice." *Smith v. City of Chester*, 155 F.R.D. 95, 96–97 (E.D.Pa.1994); *see also Jubilee v. Horn*, 959 F.Supp. 276, 278 (E.D.Pa.1997).

 "A motion for reconsideration is not properly grounded on a request that a court reconsider repetitive arguments that have fully examined by the court ...." *Tobin v. General Elec. Co.*, No. Civ. A. 95–4003, 1998 WL 31875 (E.D.Pa.1998). "The key to success on a motion is to show that there were facts or legal issues properly presented but overlooked by the court in

its decision." E.D. Pa. R. 7.1(g) cmt. 6.b. (citing *Marriott Senior Living Servs. v. Springfield Twp.,* No. Civ. A. 97–3660, 2000 WL 1781937 (E.D.Pa.2000)).

Defendant's Motion for Reconsideration is granted because "it is necessary to correct a clear error of law," and because this court overlooked other dispositive arguments presented by Defendant's counsel. The incorrect recitation of Pennsylvania law on liquidated damages is discussed below. After we discuss our "clear error of law," this court will proceed to Defendant's overlooked arguments regarding: (1) alleged breach of an implied covenant of good faith and fair dealing; (2) BBNB as an intended third party beneficiary; (3) alleged negligent misrepresentation; (4) alleged fraud; and (5) alleged promissory estoppel.

## II. Summary Judgment Standard

We render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

All inferences must be drawn, and all doubts resolved, in favor of the non-moving parties in this case, Plaintiffs. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985). On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving parties must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving parties must demonstrate the existence of evidence that would support a jury finding in their favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505.

## III. Liquidated Damages

■ Defendant contends that this court's July 25, 2002 Memorandum and Order should be reconsidered "to correct a clear error of law." *Smith,* 155 F.R.D. at 96–97. Defendant argues that Pennsylvania contract law bars a plaintiff who retains liquidated damages from seeking additional actual damages. While this court previously examined the legal issues in the case, the Defendant has correctly presented, to this court, different authority under Pennsylvania contract law which applies when a plaintiff who has retained a liquidated damage award seeks additional monetary damages versus equitable relief.[1]

---

1. This is despite Defendant's erroneous citation and lengthy discussion of *Co–Build. Inc. v. Virgin Islands Refinery Corp.,* 570 F.2d 492 (3d Cir.1978), in Defendant's July 14, 2002 Motion for Summary Judgement and Defendant's present Motion for Reconsideration. As the Plaintiffs correctly point out, the *Co–Build.* opinion is not controlling on the present case because *Co–Build.* is a federal case relating to Virgin Island contract law. Parties are reminded to use non-precedential case law only as persuasive authority and not

We believe our prior Order and Memorandum were incorrect.

 Under Pennsylvania contract law a party that retains legally enforceable liquidated damages will be barred from seeking actual damages. *See Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 162 (Pa.Super.1997) ("[P]arties who agree to include a liquidated damages clause in their contract, and do so properly, cannot later claim entitlement to actual damages; rather, in keeping with the law of contracts, the parties must be bound by their bargain."); 13 PA. CONS. STAT. ANN. § 2718.[2] Additionally, once a court finds a legally enforceable liquidated damages clause, any evidence of actual damages is inadmissible under Pennsylvania contract law as irrelevant to the action. *See Commonwealth v. Mitchell*, 517 Pa. 203, 216 n. 2, 535 A.2d 581 (1987); *Calabro v. Dept. of Aging*, 689 A.2d 347, 352 (Pa.Cmwlth.1997).[3]

This rule of law protects the bargained for contract between Blue Mountain and Monterey. Holding plaintiffs to the liquidated amount when a plaintiff alleges actual damages exceed liquidated damages mirrors the rule that the breaching party must pay liquidated damages despite the fact that actual damages may be lower. *See Citicorp Mortg., Inc. v. Morrisville Hampton Village Realty Ltd.*, 443 Pa.Super. 595, 662 A.2d 1120, 1122 (1995) (granting defendant the liquidated damage amount despite evidence that actual damages were smaller because there was no evidence that the liquidated damages constituted a penalty). Therefore, if this court finds in the future that the liquidated damage clause is legally enforceable, then Plaintiff will not be able to recover actual damages under a breach of contract claim.[4]

## IV. Breach of Implied Covenant of Good Faith and Fair Dealing.

 Defendant's motion for summary judgment with regards to Plaintiff's claim concerning an alleged breach of implied covenant of good faith and fair dealing, will be granted. As Defendant correctly states, and Plaintiff does not challenge in their reply brief, Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing. *See Drysdale v. Woerth*, 1998 WL 966020, at *3 (E.D.Pa. Nov.18, 1998); *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992); *JHE, Inc. v.*

---

label such cases as binding Pennsylvania case law.

2. 13 PA. CONS. STAT ANN. § 2718(a) states:

**Liquidated damages in agreement.**-Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

3. However, this court will reserve deciding whether evidence of actual damages may be submitted by Plaintiffs or Defendant for the limited purpose of deciding whether the liquidated clause is itself enforceable. Presently before us is Defendant's Motion In Limine; Plaintiffs' Motion in Opposition to Defendant's Motion In Limine; and Defendant's Motion to Preclude Damages Evidence. We are currently waiting for Plaintiffs' Brief in Opposition to Defendant's Motion to Preclude Damage Evidence to decide this issue.

4. This court notes that Defendant's Motion for Summary Judgement merely noted Pennsylvania's rule on determining whether a liquidated damage clause is valid; but did not present evidence the liquidated damages clause was a good faith approximation of probable damages that would result from a Buyer breach or that damages would be unascertainable or difficult to calculate. (Def. Br. at 14–16, Aug. 6, 2002) The court will reserve judgment on the enforceability of the clause at this time.

*Southeastern Pennsylvania Transp. Auth.,* 2002 WL 1018941, at *6, (Pa.Com. Pl. May 17, 2002) ("A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing.").

## V. Whether BBNB is an intended third party beneficiary.

■ Defendant's summary judgment motion that this court declare BBNB to be merely an incidental beneficiary, rather than an intended third party beneficiary is denied. Defendants have not provided this court with sufficient evidence within "depositions, answers to interrogatories, and admissions on file, together with the affidavits" to grant summary judgment.

■ Pennsylvania contract law states:

[A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *Spires v. Hanover Fire Ins. Co.,* 364 Pa. 52, 70 A.2d 828 (1950), *unless,* [1] the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties; *and* [2] the performance satisfies an obligation of the promisee to pay money to the beneficiary, *or* the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Two Rivers Terminal, L.P. v. Chevron USA,* 96 F.Supp.2d 432, 450 (2000) (citing *Inc. Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983)) (emphasis added); *see Scarpitti v. Weborg,* 530 Pa. 366, 371, 609 A.2d 147 (1992) (citing Restatements (Second) of Contracts § 302 (1979)).

Clearly, the agreement between Blue Mountain and Monterey did not specifically mention BBNB and therefore does not satisfy the *Spires* test. *Spires,* 364 Pa. 52, 57, 70 A.2d 828 ("To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract.") (emphasis in original).

■ Under the second test, it is left up to the discretion of the court to first decide if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties." *See Scarpitti,* 530 Pa. at 371, 609 A.2d 147. The second part of the test describes the two types of claimants who may be intended third parties: (1) a claimant to whom the promisee has an obligation; or (2) a claimant whom the promisee clearly intended to benefit based on the contracts performance.[5]

There are still material facts in dispute or not of record that prevent the court from granting Defendant's motion for summary judgment on this issue, including, but not limited to: (1) what the intent of the contracting parties was with regards to BBNB's status; (2) whether BBNB's relationship to the parties and BBNB's rights were contemplated or discussed by the contracting parties; (3) what specifically was discussed before the Bankruptcy Court regarding the contracting parties' intent to benefit BBNB; and (4) the extent

---

5. This court recognizes that this rule of law could conceivably deter bidders, like Monterey, from participating in future bankruptcy court auctions, because the Pennsylvania law may grant standing to the debtor's creditors against the bidder. In all such bankruptcy auctions, the auction's proceeds are clearly intended to pay off a specific list of known third party creditors.

of BBNB's involvement in the contract negotiations.

## VI. Negligent Misrepresentation

Defendant's motion for summary judgment regarding Plaintiff's negligent misrepresentation claim is granted under both the economic loss doctrine and the "gist of the action" doctrine.

### 1. Economic Loss Doctrine

■■■■ Pennsylvania's economic loss doctrine holds that negligence theories "do not apply to actions between commercial enterprises where the only damages alleged are economic losses." *Auger v. Stouffer Corp.*, No. 93–2529, 1993 WL 364622, at * 3 (E.D.Pa.1993). The purpose of the economic loss doctrine is "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 550, 564 A.2d 919, 925 (1989). Pennsylvania courts have applied the economic loss doctrine to negligent misrepresentation claims. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir.1995); *North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council*, No.Civ.A. 99–2050, 2000 WL 230214, at *7–8 (E.D.Pa. 2000) (relying on economic loss doctrine to dismiss a claim for negligent misrepresentation); *Waterware Corp. v. Ametek/US Gauge Division*, 2001 WL 1112975, at *5 (Pa.Com.Pl.2001). Therefore, this court will grant Defendant's motion for summary judgment on Plaintiffs' negligent misrepresentation claim.

### 2. "Gist of the Action" Doctrine

■■■■ In the alternative, Pennsylvania's "gist of the action" requires this court to grant Defendant's motion regarding negligent misrepresentation. Pennsylvania's " 'gist of the action' doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 & n. 8 (3d Cir. April 15, 2002) (citing *Phico Insurance Co. v. Presbyterian Medical Services Corp.*, 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). Like the economic loss doctrine, the gist of the action doctrine's purpose is "maintaining the separate spheres of the law of contract and tort." *First Republic Bank v. Brand*, 2000 WL 33394627 (Pa. Com.Pl.2000) (quoting *New York State Elec. & Gas Corp.*, 387 Pa.Super. at 550, 564 A.2d 919).

■■■ In the present case, Plaintiffs merely restate their breach of contract claim as a tort claim. They allege that Monterey "made several misrepresentations of fact regarding, *inter alia*, its desire and ability to consummate the purchase of Blue Mountain's Assets." (Blue Mountain's Compl. ¶ 57.) Neither Plaintiff elaborates on this charge in their subsequent briefs. The Complaint and Brief in Opposition to Defendant's Motion for Summary Judgment merely reiterates, albeit in fraud terms, Defendant's purportedly contractual defaults. The fraud allegations are collateral to the breach of contract, because Monterey's duties to Plaintiffs stem from the contract and not social policy. *See Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 275, 756 (Pa.Super.1995) ("[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.") "[A] contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly." *Phico Ins. Co.*, 663 A.2d at 756 (citations omitted). *See also Snyder Heating Co. v.*

*Pennsylvania Mfrs. Ass'n. Ins. Co.*, 715 A.2d 483, 487 (Pa.Super.1998).

If Plaintiff's claim were allowed to stand, it would vitiate the division between tort and contract. After all, the only negligent misrepresentation Plaintiffs allege was that Defendant stated it would adhere to the contract and then failed to follow its terms. Under this theory, all breaches of contract would constitute negligent misrepresentation. Defendant's motion for summary judgement regarding negligent misrepresentation is granted because of Pennsylvania's "gist of the action" doctrine. *See Quorum Health Resources, Inc. v. Carbon–Schuylkill Community Hosp.*, 49 F.Supp.2d 430 (E.D.Pa.1999) (doctrine barred claim of negligent performance of contractual duties); *Factory Mkt., Inc. v. Schuller Int'l, Inc.*, 987 F.Supp. 387 (E.D.Pa.1997) (doctrine barred claim of fraud based on a failure to honor guarantees contained in a contract); *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996) (doctrine barred claim of negligent performance of contractual duties); *Phico Ins. Co.*, 663 A.2d at 757–58 (same).

## VII. Fraud

■ Defendant's motion for summary judgment regarding Plaintiffs' intentional fraud claims is granted. There are two sets of alleged misrepresentations by Monterey: (1) alleged misrepresentations made *outside* of the Bankruptcy Court proceedings; and (2) alleged misrepresentations made *within* the Bankruptcy Court proceedings.[6]

There are two independent and sufficient reasons why this court is granting Defendant's motion for summary judgment on Plaintiffs' fraud claims. First, as with the negligent misrepresentation claim, Plaintiffs' claims are barred under Pennsylvania's "gist of the action" doctrine. Second, as a matter of law, any reliance by Plaintiffs on Defendant's alleged misrepresentations was unreasonable.

However, Defendant's argument that summary judgment should be granted on Plaintiffs' fraud claims based on the economic loss doctrine will not be addressed because Pennsylvania courts have not resolved their split authority on whether the economic loss doctrine does or does not bar liability for intentional torts that cause

**6.** Although misrepresentations within the proceedings could be evidence of state fraud, there may also be a separate cause of action. BBNB's complaint alleges Defendant committed a fraud on the Bankruptcy Court, 18 U.S.C. § 157. (BBNB Cmpl. ¶ 40.) Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgement details an apparently plausible case of deceit on the Bankruptcy Court. Yet, it is unclear whether Plaintiffs allege the violation as *per se* evidence of Defendant's alleged fraudulent scheme or if 18 U.S.C. § 157 is a separate cause of action upon which Plaintiffs have a private right of action. Neither party has briefed this issue and we deem it waived. It seems that a civil case before this court is not the proper vehicle for hearing an 18 U.S.C. § 157 case. It is a matter for the Bankruptcy Judge to decide. It can also be reported to Department or Justice for review. *See, e.g., In re Kaliana*, 202 B.R. 600, 606 (Bkrtcy.N.D.Ill.1996) (referring suspected activity of fraud under 18 U.S.C. § 157 to the U.S. Attorney's Office). Indeed, Plaintiffs admit that Monterey's counsel, Mr. Hughes, notified the Bankruptcy Court on August 29, 2000 that Monterey's disclosures to the court on August 3, 2000 were incorrect, and Monterey would not be following through with the purchase. Apparently, the Bankruptcy Court took the letter under advisement and did not refer the matter to U.S. Attorneys under 18 U.S.C. § 3057(a). Judge Twardowski's action or inaction on the letter and any related filings may have *res judicata* effects, and we will not review it in this suit. This court will not lightly tread on the jurisdiction of another court, and any such separate claim in this court will be dismissed..

purely economic losses. *See Werwinski*, 286 F.3d at 675 ("[T]he application of the economic loss doctrine to intentional fraud actions remains unsettled, and the district court opinions interpreting Pennsylvania law on the point provide little guidance"); *KNK Medical-Dental Specialities, Ltd. v. Tamex Corp.*, No. CIV. A. 99–3409, 2000 WL 1470665, at *5 (E.D.Pa.2000) (Van Antwerpen, J.) ("There is a split of authority among Pennsylvania district courts as to whether the economic loss doctrine applies to intentional fraud claims"). *Compare Worldwideweb Networx Corp. v. Entrade, Inc.*, 2002 WL 1472336, at *3 (Pa. Com.Pl. June 20, 2002) ("[T]he economic loss doctrine does not apply to intentional tort claims."); *Amico v. Radius Communications*, No. 1793, 2001 WL 1807924 (Pa. Com.Pl.2001) (holding that economic loss doctrine does not apply to intentional fraud claims); *First Republic Bank v. Brand*, 50 Pa. D. & C.4th 329 (2000) (holding that the economic loss doctrine does not apply to fraudulent misrepresentation claim); with *Sunquest*, 40 F.Supp.2d at 651 ("[A] plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is 'merely another way of stating its breach of contract claim,' . . . or when its success 'would be wholly dependent upon the terms of the contracts.'"); *Montgomery County v. Microvote Corp.*, No. Civ. A. 97–6331, 2000 WL 134708, at *7 (E.D.Pa. Feb.3, 2000) (economic loss rule bars recovery for both negligent and intentional misrepresentation).

### 1. "Gist of the Action" Doctrine [7]

██ As with Plaintiffs' negligent misrepresentation claim, Plaintiffs' fraud claim restates a contracts claim disguised as a tort claim. This is true for the statements made to the Plaintiffs both outside and within the Bankruptcy Court proceedings.

According to Plaintiffs, the following were Defendant's intentional misrepresentations: (1) claiming to be able to pay the purchase price in cash; (2) claiming to be able to receive financing for the purchase; (3) claiming to be able to complete the purchase within the contract's time-line; and (4) statements to force Blue Mountain to plant a different mushroom variety. (Blue Mountain's Cmpl. ¶¶ 41–55; Pl. Opp'n Br. 3–6, 19, July 18, 2002.) These are contract issues dressed as a tort claim. The fraud allegations are collateral to the breach of contract, because Monterey's duties to Plaintiffs stem from the contract and not social policy. *See Phico Ins.*, 444 Pa.Super. at 228, 663 A.2d 753 ("[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.") "[A] contract action may not be converted into a tort action simply by alleging that the conduct in question was done wantonly." *Id.* at 756 (citations omitted). Moreover, if we allowed this tort claim to go forward, especially in light of the sophistication of all the parties and the representation of Blue Mountain and Monterey by counsel during contract negotiations, we would be "unfairly allowing a means of recovering damages beyond that which was negotiated and agreed upon by the parties." *Cf. Northeastern Power Co. v. Balcke-Durr, Inc.*, 39 U.C.C. Rep.

7. We note that if Blue Mountain did not have a contract with Monterey, then any misrepresentations made by the Defendants to the Bankruptcy Court would not be barred under Pennsylvania's "gist of the action" doctrine because any duty to refrain from misrepresentations to the Bankruptcy Court stem from social policy and are not created by virtue of contract.

Serv.2d 713, 1999 WL 674332, at *9 (E.D.Pa.1999) (Van Antwerpen, J.).

All of the alleged intentional misrepresentations concern contract issues: (1) the method of payment (Agreement ¶¶ 2–3; Contract Schedule 10.6); (2) the ability of payment (Agreement ¶ 12 "Representations, Warranties and Acknowledgments of Buyer"); (3) the time-line to complete the purchase (Agreement ¶ 1.1); and (4) the conditions precedent to buyer's purchase that seller must perform (Agreement ¶¶ 13, 14). Any alleged duty that Monterey had to Plaintiffs derive from contract law and not from social policy. Thus, under Pennsylvania's "gist of the action" doctrine, Blue Mountain's allegations lie in contract and not in tort.

We note that if the alleged misrepresentations made by the Defendant were made solely before the Bankruptcy Court, then Pennsylvania's "gist of the action" doctrine would be inapplicable because the duty to refrain from misrepresentations to the Bankruptcy Court would stem solely from social policy and are not created by virtue of contract.[8] *Cf. See Phico Ins.*, 444 Pa.Super. at 228, 663 A.2d 753 ("[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.") However, the present case may be distinguished because the parties were, at the time of the Bankruptcy Court hearing, under a contractual duty to each other. Indeed, the contract specifically lists the Bankruptcy Court's approval of the deal as a condition precedent to Monterey's purchase of Blue Mountain. (Agreement ¶¶ 10.10, 14.4.) It would seem illogi-

cal to vitiate Pennsylvania's "gist of the action" doctrine by allowing an intentional tort suit that may grant the Plaintiffs damages that exceed their bargained for deal merely because the misrepresentations were made to Plaintiffs inside and outside of court.[9] Plaintiffs concede that Defendant made the same allegedly material misrepresentations in private prior to the August 3, 2000 bankruptcy court hearing.

■■■ This analysis changes in regards to BBNB if BBNB is declared an incidental third party beneficiary. As BBNB is claiming to be an intended third party beneficiary to maintain its breach of contract claim, then BBNB can not also claim to be an incidental third party beneficiary in order to maintain a tort action against Monterey. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). BBNB can not maintain an action for fraud because the "gist of the action" doctrine prevents a fraud suit between parties to a contract when the fraud is collateral to the contract action. As an intended third party beneficiary, BBNB will be held to the contractual agreement between Blue Mountain and Monterey. If however, BBNB is merely an incidental third party beneficiary, then BBNB would have no contractual rights in the matter. *See* RESTATEMENT (SECOND) OF CONTRACTS § 315 ("An incidental beneficiary acquires by virtue of the promise no right against

---

**8.** The social duty would stem from a lawyer's duty of candor to the tribunal (MODEL RULES OF PROFESSIONAL CONDUCT RULE 3.3) and 18 U.S.C. § 157.

**9.** Yet, as stated *supra*, we believe any alleged misrepresentations made to the Bankruptcy Court are a matter for that court.

the promisor or the promisee"). In that case, any duty that Monterey had to refrain from misrepresentations before the tribunal would stem solely from social policy and the "gist of the action" doctrine would not bar BBNB's fraud suit against Monterey. Yet, BBNB still has not carried its burden of establishing a prima facie fraud cause of action. We now turn to that issue.

### 2. The Prima Facie Case

 Even accepting the facts in the light most favorable to Plaintiffs, Plaintiffs can not establish a prima facie fraud claim because any reliance was unreasonable.[10] To sustain a prima facie case, Plaintiffs must establish: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 207–08, 647 A.2d 882 (1994); *see also Northeastern Power Co.*, 1999 WL 674332, at *12; *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1250 (Pa.Super.2002).

Even assuming Plaintiffs' allegations as true, Plaintiffs' fraud allegations fail as a matter of law. Blue Mountain is a sophisticated party which was represented by counsel during contract negotiations. As such, Plaintiffs can not justifiably rely on Defendant's alleged misrepresentations which contradict the written agreement. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Inv.*, 750 F.Supp. 711, 718 (W.D.Pa.1990) (sophisticated parties can not rely on oral representations that contradict the written agreement), *aff'd* 951 F.2d 1399 (3d Cir. 1991); *Josephs v. Pizza Hut, Inc.*, 733 F.Supp. 222, 227 (W.D.Pa.1989) ("It is not reasonable for experienced business people to make business decisions based on oral representations in contravention of written statements").

Moreover, the contract contained an integration clause which stated:

> This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions expressed or implied, oral or written, in connection therewith, except as herein contained.

(Agreement ¶ 32). The integration clause adds weight to Defendant's argument that Plaintiffs unreasonably relied on contradictory or opinion statements by Monterey prior to or contemporaneous to the agreement.[11] *See Peerless Wall & Window Covering v. Synchronics, Inc.*, 85 F.Supp.2d 519, 531 (W.D.Pa.2000) ("[P]laintiff's fraud claim ... is barred by the integration clause as contrary to the express terms of the license agreement ...."); *Sunquest Information Systems Inc. v. Dean Witter Reynolds Inc.*, 40 F.Supp.2d 644, 656 (W.D.Pa.1999) (dismissing fraud in the inducement claim as contrary to integrated contract). If Blue Mountain believed that the structure of Monterey's financing was so crucial to the transaction, it should have

**10.** The court will refrain from discussing Blue Mountain's scant factual allegation concerning the damages caused by such reliance.

**11.** This court will reserve opinion on the effect of the integration clause and the parole evidence rule upon the admissibility of evidence for a later order if the case continues towards trial. We are currently waiting for Plaintiffs' Brief in Opposition to Defendant's Motion to Preclude Damage Evidence. This court also has before it a Defendant's Motion In Limine.

been included in the contract. If Blue Mountain was required to plant certain mushroom varieties as a condition of sale, then a term should have been included along side the other activities that Blue Mountain was required to perform prior to the sale. (Agreement ¶¶ 13, 14.) Plaintiffs' reliance on the Defendant's misrepresentations is unreasonable for sophisticated parties, and contrary to the language of their bargained for contract.

Again, this analysis changes in regards to BBNB if BBNB is declared an incidental third party beneficiary. If BBNB is an intended third party beneficiary, then BBNB's forebearance before the Bankruptcy Court was to protect its contractual rights and benefits. As such, BBNB's reliance would be unreasonable because they would be relying on misrepresentations contrary to a written agreement that delineates BBNB's rights and reasonable expectations. If BBNB is an incidental third party beneficiary then Defendant's misrepresentations to BBNB within the Bankruptcy Court proceedings may or may not have been reasonably reliable because Monterey's statements were made to a Bankruptcy Court under penalty of the ethics rules and 18 U.S.C. § 157.

Defendant's motion for summary judgment regarding Plaintiffs' Pennsylvania intentional misrepresentation claim is granted. If BBNB is deemed only an incidental third party, then BBNB's state fraud claim based on statements before the Bankruptcy Court may be re-instated.[12] But because BBNB is disavowing such a status, the fraud claims will be dismissed at this time in their entirety without prejudice.

## VIII. Promissory Estoppel

■ The promissory estoppel cause of action is only alleged by Plaintiff Blue Mountain. Defendant's motion for summary judgment on this cause of action is granted, and the claim will be dismissed, because the interest of justice does not require this court to enforce the alleged promise and any reliance by Blue Mountain was unreasonable.

As with Plaintiffs' fraud claim, Blue Mountain is a sophisticated party that unreasonably relied on alleged promises because: (1) the parties duties were covered by the contract and not by extrinsic statements; (2) a sophisticated contracting party should have obtained alterations to the Agreement in writing; and (3) the contract stipulated that any alterations must be in writing. (Agreement ¶ 33.) Blue Mountain claims that Monterey's statements about Monterey's efforts to secure financing between August 3 and August 28, 2000 led Blue Mountain to refrain from seeking an alternative buyer for its assets.

■ "In order to maintain an action in promissory estoppel, [an] aggrieved party must show that: (1) the promissor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee, (2) the promisee actually took action or refrained from taking action in reliance on the promise, and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops*, 560 Pa. 394, 745 A.2d 606, 610 (2000) (citing RESTATEMENT (SECOND) OF CONTRACTS § 90). As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute. *Id.*

The court finds the application of the promissory estoppel unneeded because Monterey was already under contract to

---

**12.** Nevertheless, any separate claim for a fraud on the court would remain dismissed as discussed *supra* in footnote 6.

seek financing of the agreement. Because Blue Mountain's interests are protected under a contract with full consideration, the consideration substitute of promissory estoppel is unneeded. *See Carlson v. Arnot–Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir.1990) ("finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted" under Pennsylvania contract law); *Synesiou v. Designtomarket, Inc.*, 2002 WL 501494, at *4 (E.D.Pa. Apr.3, 2002) ("[P]romissory estoppel has no application when parties have entered into an enforceable agreement."). These sophisticated parties stipulated the duties of Blue Mountain and Monterey under the Agreement and, as such, their rights will be governed by the terms of their bargained for agreement. Defendant's motion for summary judgment regarding promissory estoppel is granted.

## IX. Conclusion

Defendant's motion for reconsideration will be granted because Defendant has pointed to a clear error of law by this court and because there were other dispositive motions that we did not address in our July 25, 2002 memorandum and order. Defendant's motion for summary judgment regarding the liquidated damages clause will be granted because Pennsylvania contracts law does not allow a party who retains a liquidated damage to claim actual damages at law. However, Defendant's motion for summary judgment that requests this court find the liquidated damages clause enforceable will be denied at this time because Defendants have not pointed to sufficient evidence to meet their burden. Defendant's motion for summary judgment regarding Plaintiff's fraud, promissory estoppel, breach of covenant of good faith and fair dealing, and negligent misrepresentation claims is granted because these claims can not be maintained

under Pennsylvania law. Additionally, Defendant has proven through prior case law, submitted affidavits and evidence that any reliance by Plaintiffs on Defendant's alleged misrepresentations was unreasonable in light of the written contract, the integration clause, and the parties' sophistication. However, there are material issues of fact that preclude summary judgment regarding the issue of BBNB's standing as a third party beneficiary. An appropriate order follows.

## ORDER

AND NOW, this 5th day of September, 2002, upon consideration of Defendant's Motion for Reconsideration filed on August 6, 2002; Plaintiffs' Memorandum in Opposition to Defendant's Motion for Reconsideration filed August 20, 2002; Defendant's Motion for Summary Judgment filed June 14, 2002; Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment filed June 18, 2002; and consistent with the foregoing Memorandum, it is hereby ORDERED:

1. Defendant's Motion for Reconsideration filed on August 6, 2002 is GRANTED and our prior Order of July 25, 2002 is hereby VACATED and our Memorandum filed with it is hereby WITHDRAWN;

2. Defendant's Motion for Summary Judgment filed on July 14, 2002 is GRANTED IN PART and DENIED IN PART as follows:

a. Defendant's Motion for Summary Judgment seeking a determination that if an enforceable liquidated damages clause exists, it bars Blue Mountain Mushroom Co., Inc. and Blue Mountain National Bank from seeking damages at law under Pennsylvania contact law is GRANTED and we so find;

b. Defendant's Motion for Summary Judgment on the grounds that there exists

an enforceable liquidated damages clause is DENIED at this time WITHOUT PREJUDICE;

c. Defendant's Motion for Summary Judgment on the grounds that Blue Mountain National Bank is an incidental and not an intended third party beneficiary is DENIED at this time WITHOUT PREJUDICE;

d. Defendant's Motion for Summary Judgment with respect to Blue Mountain Mushroom Co., Inc. and Blue Mountain National Bank's breach of implied covenant of good faith and fair dealing claims is GRANTED and these claims are DISMISSED;

e. Defendant's Motion for Summary Judgment with respect to Blue Mountain Mushroom Co., Inc.'s negligent misrepresentation claim is GRANTED and this claim is DISMISSED;

f. Defendant's Motion for Summary Judgment with respect to Blue Mountain Mushroom Co., Inc.'s promissory estoppel claim is GRANTED and this claim is DISMISSED;

g. Defendant's Motion for Summary Judgment with respect to Blue Mountain Mushroom Co., Inc. and Blue Mountain National Bank's Pennsylvania state law intentional misrepresentation fraud claims is GRANTED and these claims are DISMISSED, subject to the right of Blue Mountain National Bank to reinstate as set forth in Part VII of the Memorandum;

h. Defendant's Motion for Summary Judgment with respect to any claim by Blue Mountain Mushroom Co., Inc. and Blue Mountain National Bank for fraud on the Bankruptcy Court is GRANTED and any such claim is DISMISSED, if indeed such claim even existed.