**METROBANK, National Association, Wells Fargo Bank Iowa, N.A., Bank of America, N.A., Firstar Bank, N.A., and U.S. Bank, N.A., Plaintiffs,**

v.

**Holmes FOSTER, in his official capacity as Superintendent of Banking and Administrator of Electronic Transfer of Funds, Iowa Division of Banking, Iowa Department of Commerce, Defendant.**

No. CIV.4–01–CV–10226.

United States District Court,
S.D. Iowa,
Central Division.

March 6, 2002.

Jeffrey E. Lamson, Mark McCormick, Belin, Lamson, McCormick, Zumback & Flynn, PC, Des Moines, IA, E. Edward Bruce, Keith A. Noreika, Covington & Burling, Washington, DC, for plaintiffs.

Donald G. Senneff, Attorney General of Iowa, Dennis W. Johnson, Iowa Attorney General, Prosecutions Division, Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, Chief Judge.

Plaintiffs filed a motion for summary judgment and permanent injunction on May 10, 2001. An amicus curiae brief in support of plaintiffs' position was filed by the Office for the Comptroller of Currency ("OCC") on May 22, 2001. Defendant filed his resistance to plaintiff's motion, and a cross-motion for summary judgment, on October 25, 2001.[1] Plaintiffs then filed a resistance to defendant's motion and reply in support of their own motion for summary judgment on November 6, 2001. Defendant filed a reply brief in support of his cross-motion for summary judgment on November 14, 2001. The Court held a hearing on January 25, 2002. The matter is fully submitted.

## I. BACKGROUND

Plaintiffs are banking associations organized and existing under the National Bank Act, 12 U.S.C. § 21 *et seq.* Plaintiffs will be collectively referred to as "the National Banks" in this Order. Defendant is Holmes Foster, in his official capacity as Superintendent of Banking and Administrator of Electronic Transfer of Funds, Iowa Division of Banking, Iowa Department of Commerce. Defendant will be referred to as "the Administrator" in this Order. This Order will address whether the National Banks may charge fees to individuals who use their automated teller machines ("ATMs") when those individuals

---

1. Plaintiffs' motion for summary judgment and permanent injunction was stayed for a period of time, pending resolution of two motions filed by defendant. This Court denied defendant's motion to dismiss in an August 21, 2001 Order; and Chief Magistrate Judge Ross A. Walters denied defendant's motion to continue summary judgment proceedings on September 26, 2001.

do not maintain an account at the bank which owns and operates the ATM.

The National Banks own and operate ATMs at numerous locations in the state of Iowa. The National Banks purchase, install, protect, supply and maintain the machines that dispense cash and perform other banking operations. The National Banks also incur rental costs for machines which are not on their own premises.

The National Banks desire to charge a fee to individuals who use an ATM if that person does not maintain an account at the bank which owns and operates that ATM. Essentially, the National Banks argue that they provide a machine's service at a cost, and that they should be able to charge those using the service. The National Banks will post a "fee notice" on the screen to notify ATM users during their transaction that they will be charged a fee, in accord with federal law and regulations. The ATM user will then have a chance to cancel the transaction prior to incurring a fee.

The OCC is the federal regulatory agency charged with administration of the National Bank Act ("NBA"), 12 U.S.C. section 1—216d. The OCC has made clear that the National Banks should be able to charge ATM fees. *See* 12 C.F.R. section 7.4002(a) and (b). The OCC also states the amount of the fees should be a business decision to be made by each bank. *Id.* However, Iowa law prohibits the National

Banks from charging fees to non-account-holders who use their ATMs. *See* Iowa Code §§ 527.4, 527.5, and Iowa Administrative Code § 187–10.4(527)(3)(a)(3).[2]

The Administrator asserts that the National Banks are already compensated for providing ATM services to non-account-holders. The Administrator has provided the affidavit of Richard Jenkins, vice president and corporate counsel for Shazam, Inc. ("Shazam"). *See* Appendix in Support of Defendant's Motion for Summary Judgment, at 1–4. Shazam serves as the central routing unit for ATMs in the state of Iowa pursuant to Iowa law. A group called the "Shazam Ad Hoc Pricing Committee" meets to determine the amount of "interchange fees" that should be paid to financial institutions when non-account-holders use their ATMs. *Id.* at ¶ 4. In September 1999, the committee met and "decided that a nine (9) percent return" on costs would constitute the interchange fee. *Id.* Plaintiffs in this case, the National Banks, received a total of more than 3.5 million dollars in interchange fees during the period of May 2000 through April 2001. *Id.* at ¶ 5.[3]

In the complaint, the National Banks allege they are entitled to relief from Iowa's ATM fee prohibition. The National Banks request a declaratory judgment pursuant to 28 U.S.C. sections 2201–2202, and assert they are entitled to summary judgment as Iowa law is preempted by the

---

**2.** In support of his motion to dismiss, the Administrator argued there was not a definitive ruling from the Iowa Supreme Court on whether Iowa law prohibited the National Banks from charging non-accountholders ATM fees. The Administrator argued that because there was not such a ruling, that there was not a case or controversy ripe for this Court to adjudicate. This Court rejected this argument. *See* August 21, 2001 Order at 8, n. 6 (denying motion to dismiss). Both the National Banks' and the Administrator's interpretation of Iowa law is that such fees are

prohibited. *Id.* This Court accepts the interpretation of Iowa law agreed upon by the parties, and finds it is not necessary to perform a non-binding analysis of that state law.

**3.** Jenkins indicated that the National Banks would have received additional interchange fees, during this same time frame, from transactions that were processed outside of the Shazam network. *See* Appendix in Support of Defendant's Motion for Summary Judgment, at 1–4, ¶ 5.

National Bank Act ("NBA"). In his motion for summary judgment, the Administrator asserts Iowa's ATM fee prohibition is permissible under a different federal law, the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. section 1693 *et seq.;* that Iowa's ATM fee prohibition is not preempted by the NBA; and that the position of the OCC is not entitled to deference by this Court.

## II. APPLICABLE LAW & DISCUSSION

### A. Standard of Review

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Whether EFTA or NBA is the Applicable Federal Law

The Administrator asserts the EFTA, and not the NBA, is the federal statute Congress intended to control ATM use. Specifically, the Administrator alleges the EFTA gives states the right to regulate electronic fund transfers, and specifically to grant consumers greater protections than those given under the EFTA itself. *See* 15 U.S.C. § 1693q. The Administrator asserts the ATM fee prohibition in Iowa Code Chapter 527 is allowed under the EFTA as it grants greater protection to consumers, so that ATMs are available on a nondiscriminatory basis. Further, Congress enacted the ATM Fee Reform Act in 1999. *See* 15 U.S.C. § 1693b(d)(3). This law addresses ATM fees and requires that such fees be disclosed at the time of the transaction, and sets up the type of notice that must be provided to the ATM user. *Id.*

When similar issues arose in a previous case, this Court agreed with the Administrator. *See Bank One, Utah, National Assoc. v. Guttau,* 1998 WL 1796176 (S.D.Iowa 1998). Specifically, this Court found the EFTA and not the NBA addressed bank charges for ATMs because the EFTA contains provisions regarding ATM fees. This Court concluded in that Order that Iowa's ATM fee prohibition was not preempted by the EFTA. The Court stated that the EFTA deferred to state law, and that Iowa's fee prohibition was reasonable in light of the interchange fee allowed under Iowa law.

The Eighth Circuit did not specifically address the above-noted fee prohibition ruling when it reversed this Court's decision, *see Bank One v. Guttau,* 190 F.3d 844 (8th Cir.1999), but it did clearly indicate that the NBA, and not the EFTA, governs ATMs. The Eighth Circuit addressed the portion of Iowa law that prohibited a bank from operating an ATM in Iowa if it did not have an in-state office and approval from the Administrator. *Id.* at 847. The Eighth Circuit determined that nothing in the EFTA "grants the states any addition-

al authority to regulate national banks," and that section 1693q does nothing to save state regulation of ATMs from preemption by other federal law. *Id.* at 850. The majority of the panel then went on to state, "Congress has made clear in the NBA its intent that ATMs are not to be subject to state regulation." *Id.* Ultimately the Eighth Circuit found that the state regulation was preempted by the NBA, and that the plaintiff was entitled to a permanent injunction enjoining enforcement of the Iowa law that required banks to have an in-state office and approval from the Administrator before operating an ATM. *Id.* at 851.

This Court finds that Congressional adoption of the ATM Fee Reform Act, *see* 15 U.S.C. § 1693b(d)(3), does nothing to alter the governing statements of law found in *Bank One.* Congress decided to provide consumers with extra protections, and now banks that charge ATM fees have to provide notice to machine users during the transaction pursuant to section 1693b(d)(3). However, Congress did not expressly change the governing law found in *Bank One:* that the NBA and not the EFTA is the relevant federal legislation, and ATMs are not subject to state regulation.

### C. Whether Iowa ATM Fee Prohibition is Preempted

As previously stated in this Order, Iowa law does not allow national banks to charge ATM fees to non-accountholders. *See* IOWA CODE §§ 527.4, 527.5, and IOWA ADMINISTRATIVE CODE § 187–10.4(527)(3)(a)(3).

The National Banking Act gave nationally chartered banks the ability to exercise "all such incidental powers as shall be necessary to carry on the business of banking." *See* 12 U.S.C. § 24 (Seventh) (detailing the corporate powers of national bank associations). Banks have always needed the ability to dispense cash and accept withdrawals as a part of their business, and these are examples of activities that are today often carried out at ATMs across the country. National banks activities are regulated by the OCC. The OCC has issued 12 C.F.R. § 7.4002, which states in relevant part:

(a) *Customer charges and fees.* A national bank may charge its customers non-interest charges and fees, including deposit account service charges.... All charges and fees should be arrived at by each bank on a competitive basis and not on the basis of any agreement, arrangement, undertaking, understanding, or discussion with other banks or their officers.

(b) *Considerations.* The establishment of non-interest charges and fees, and the amounts thereof, is a business decision to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A bank reasonably establishes non-interest charges and fees if the bank considers the following factors, among others:

(1) The cost incurred by the bank, plus a profit margin, in providing the service;

(2) The deterrence of misuse by customers of banking services;

(3) The enhancement of the competitive position of the bank in accordance with the bank's marketing strategy; and

(4) The maintenance of the safety and soundness of the institution.

Further, the OCC has made clear that this provision applies to the activities a bank engages in through electronic means, including ATMs. *See* 12 C.F.R. § 7.1019.[4]

4. The Court also recognizes the interpretative letters sought by the National Banks and is-

If Congress intends a federal statute to set aside the laws of a State, then the Supremacy Clause of the United States Constitution requires the courts follow federal law. *See* United States Const., Art. VI, cl. 2. The standard for whether state laws are preempted by laws governing national banks was stated by the United States Supreme Court in *Barnett Bank of Marion Cty. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (addressing 12 U.S.C. section 92, which governs national banks). If a state law is in " 'irreconcilable conflict' " with federal law, then federal law should preempt the state law. *Id.* at 31, 116 S.Ct. 1103 (quoting *Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982)). If state law is " 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " then again, federal law should preempt the state law. *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). In *Barnett Bank,* the federal law at issue authorized national banks to engage in certain insurance-related activities, while the state law prohibited the national banks from those same activities. *Id.* This Court finds ATM regulation analogous, as federal law permits an activity by national banks—the charging of ATM fees—while Iowa law prohibits this activity.

The Administrator has argued that the National Banks are not prohibited from profiting from ATMs under Iowa's regulations as they may receive a nine percent rate of return on the use of their ATMs by non-accountholders in the form of interchange fee money. The interchange fee, however, has nothing to do with a banks ability to directly charge ATM users a fee. That is a completely separate matter. The Court finds Iowa law prohibiting National Banks from charging non-accountholders who use the National Banks' ATMs—the banks' customers—a fee, is an obstacle to the rights given the National Banks by the OCC regulations. *See* 12 C.F.R. §§ 7.4002 and 7.1019.

Additionally, the Administrator has argued that the OCC's opinions and regulations are not entitled to deference. This Court disagrees. *See United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 2173 n. 13, 150 L.Ed.2d 292 (2001) (citing *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 256–257, 115 S.Ct. 810, 130 L.Ed.2d 740);[5] *see also Bank One,* 190 F.3d at 849, 850 (stating that OCC's interpretation of the NBA "is entitled to great weight") (quotation and citations omitted).

While the Court does not dispute the fact that Iowa's development of the Shazam system has served the Iowa consumer well through its regulation of Iowa's ATM system, the Court now faces a much broader concern about the interaction of federal and state laws. While this Court previously found that the state of Iowa did have the power to prohibit ATM fees as it was not prohibited by the EFTA, it is now clear that is not the law in the Eighth Circuit. The governing interpretation of the law is that the EFTA is not the relevant legislation, and under the governing

sued by the OCC. *See* Appendix to Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Permanent Injunctive Relief, Exhs. A–C. These letters elucidate the OCC's position that under its regulations and the NBA the National Banks may charge non-accountholders ATM fees.

**5.** The Court in *Mead,* quoting *NationsBank,* stated that the OCC "is charged with the enforcement of banking laws to an extent that warrants the invocation of [the rule of deference] with respect to [its] conclusions as to the meaning of these laws." 121 S.Ct. at 2173 n. 13.

statute, the NBA, "ATMs are not to be subject to state regulation." *See Bank One,* 190 F.3d at 850. This district court is bound to follow that decision.

The Court therefore concludes Iowa's ATM fee prohibition is preempted.

### D. Whether the Court Should Issue a Permanent Injunction

In order to grant a permanent injunction, Courts generally analyze the same four factors that are used when a preliminary injunction is requested. *See Bank One,* 190 F.3d at 847 (discussing four *Dataphase* factors) (citing *Randolph v. Rodgers,* 170 F.3d 850, 857 (8th Cir.1999); *Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998); and *Fogie v. THORN Americas, Inc.,* 95 F.3d 645, 646 (8th Cir.1996)). However, in *Bank One,* the Eighth Circuit determined that a permanent injunction should be granted if the plaintiff could show two things: first, that the Iowa law at issue was preempted; and second, that the plaintiff would suffer irreparable harm if the state is not enjoined from enforcing its law. *Id.* at 847–848. *Bank One* is the most relevant previous ruling of a court regarding chapter 527 of the Iowa Code, federal preemption, and whether a permanent injunction should be issued.

This Court has already determined that the first prong is met, as Iowa law is preempted. In assessing the second prong in *Bank One,* irreparable harm, the Eighth Circuit commented as follows:

> To be entitled to the grant of an injunction, Bank One must establish the existence of irreparable harm. We conclude that is has done so, for in the absence of an injunction the continued enforcement of the relevant provisions of the Iowa EFT would result in irreparable economic loss to Bank One. Accordingly, Bank One is entitled to the entry of a permanent injunction enjoining the enforcement of those provisions.

*Bank One,* 190 F.3d at 850–51. Following the dictates of the Eighth Circuit Court of Appeals, this Court finds the National Banks have established irreparable harm through their economic loss by not being able to charge non-accountholders a fee for use of their ATM machines.

### III. CONCLUSION

For the aforementioned reasons, plaintiffs' motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. Iowa's law prohibiting plaintiffs from charging ATM fees to non-accountholders is preempted by federal law. A permanent injunction enjoining enforcement of Iowa's ATM fee prohibition is hereby entered. The Clerk of Court shall enter judgment reflecting such an injunction.

IT IS SO ORDERED.