**HOSPICOMM, INC., Plaintiff,**

v.

**FLEET BANK, N.A., Defendants.**

**No. CIV.A.03–6901.**

United States District Court,
E.D. Pennsylvania.

Sept. 30, 2004.

Craig Robert Lewis, Helen M. Braverman, Braverman Daniels Kaskey, Ltd., Philadelphia, PA, for Plaintiff.

Nicholas Deenis, Stradley Ronon Stevens & Young LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM & ORDER

SURRICK, District Judge.

Presently before the Court is Defendant Fleet Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) (Doc. No. 2). For the following reasons we will grant Defendant's motion, and we will permit Plaintiff to file an amended complaint.

### Background

Plaintiff Hospicomm, Inc. is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Plaintiff provides data processing, marketing, operations management, and other services to healthcare providers. (Compl. ¶ 2.) Defendant Fleet Bank, N.A., is a bank incorporated in Rhode Island with its principal place of business in Boston, Massachusetts.[1] (*Id.* ¶ 3.)

Pursuant to an agreement reached on November 21, 2002, Plaintiff began performing all day-to-day management services for Hamilton Continuing Care Center ("Hamilton"). On behalf of Hamilton, Plaintiff established numerous bank accounts with Defendant. Access to these accounts was limited to authorized account signatories and authorized account managers. Defendant issued "transfer cards" to these authorized persons, to allow them to transfer funds between the accounts. (*Id.* ¶ 10.) Plaintiff alleges that upon establishing these accounts, "an implied contract was entered" between Plaintiff and Defendant. (*Id.* ¶ 9.)

---

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as this is a dispute between citizens of different states, and the amount in controversy exceeds $75,000.

On or about April 15, 2003, Plaintiff terminated an employee named Guillermo A. Martinez. Martinez had been employed as a financial analyst and his duties included bookkeeping for facilities managed by Plaintiff, including Hamilton. (*Id.* ¶ 13.) After terminating Martinez, Plaintiff discovered bank statements for one of the accounts held by Defendant that indicated that ATM withdrawal transactions had been processed through the account. Plaintiff determined that Martinez, an employee without access to the accounts, gained access when he requested and received a "VISA ATM" card. (*Id.* ¶ 17.) Over the course of an eight-month period, Martinez allegedly used the ATM card issued to him by Defendant to make more than 400 transactions and/or cash withdrawals from the accounts totaling in excess of $148,000.[2] (*Id.* ¶ 18.)

After reimbursing Hamilton for the funds converted by Martinez, Plaintiff filed the instant action against Defendant. Plaintiff alleges that Defendant issued Martinez the ATM card without "prior notification, consultation, or approval" from Plaintiff or Hamilton; Defendant failed to detect these "highly suspect transactions and irregular withdrawals"; and Defendant failed to take any action or notify Plaintiff about the issuance of the ATM card or the suspicious activity connected to the account. (*Id.* ¶¶ 20–24.) On the basis of these allegations Plaintiff filed the instant Complaint, (Doc. No. 1 Ex. 1), in the Court of Common Pleas in Philadelphia County, alleging negligence; gross negligence; and breach of the duties to exercise ordinary care, due diligence, and good faith in violation of Article 4 of the Uniform Commercial Code ("UCC"). Defendant removed the case pursuant to 28 U.S.C. § 1441.

Defendant subsequently filed the instant motion to dismiss. Defendant contends that the entire Complaint should be dismissed because: (1) Defendant owed no duty of care to Plaintiff such that is would be responsible for negligence or gross negligence; (2) any duty Defendant has was the result of contract, such that the Plaintiff's tort claims should be barred by "the economic loss rule," and "the gist of the action doctrine"; and (3) Plaintiff's UCC Article 4 claim must be dismissed because Article 4 does not apply to ATM cards.

### Standard of Review

Fed.R.Civ.P. 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Tracinda Corp. v. DaimlerChrysler AG,* 197 F.Supp.2d 42, 53 (D.Del.2002). Though Rule 8(a)'s "plain statement" requirement is construed quite liberally, the court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). The court should not look to whether a plaintiff will "ultimately prevail." It should only consider whether the plaintiff should be allowed to offer evidence in support of their claims. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997).

### Discussion

■ Plaintiff's Complaint includes tort claims for negligence, and a claim under UCC Article 4. Defendant first contends that the tort claims must be dismissed because Defendant owed Plaintiff no duty as Plaintiff was not a customer of Defendant. Under Pennsylvania law the ele-

---

**2.** In connection with these allegations, Martinez has been indicted in the Eastern District of Pennsylvania for violation of 18 U.S.C. § 1029(a)(2). (Doc. No. 2 Ex. B.)

ments of a claim for negligence include: "(1) a duty or standard of care; (2) a breach thereof; (3) proximate causation; and (4) actual damages." *Carlotti v. Employees of Gen. Elec. Fed. Credit Union No. 1161*, 717 A.2d 564, 567 (1998) (citing *Orner v. Mallick*, 515 Pa. 132, 527 A.2d 521 (1987)).

Defendant contends that it owed no duty to Plaintiff because Plaintiff was not the bank's customer. The Complaint alleges that "[Plaintiff] established, on behalf of Hamilton ... numerous commercial and fiduciary accounts with Defendant Fleet Bank." (Compl.¶ 8.) The Complaint further alleges that "Martinez solicited Fleet Bank through the internet for the issuance of a Visa ATM card allowing cash withdrawal access to a Hamilton payroll account maintained by Fleet Bank." (*Id.* ¶ 19.) Defendant argues that Plaintiff was an agent of Hamilton, and as such was not a party to any agreement formed between Defendant and Hamilton. Defendant contends that these allegations show that Hamilton was Defendant's customer and was thus the only party to whom Defendant owed a duty. (Doc. No. 2 at 5.) Defendant argues that this fact compels the conclusion that Plaintiff cannot bring a claim for negligence.

In support of its argument Defendant cites the case of *Eisenberg v. Wachovia Bank, N.A.*, in which the Court of Appeals for the Fourth Circuit considered whether a bank owes a duty of care to a noncustomer. 301 F.3d 220, 225 (4th Cir.2002).

In that case the plaintiff brought suit against the bank after he was defrauded by a customer of the bank. As a part of the scheme, the plaintiff wired a check to the customer's account with the bank. After this money was converted, the plaintiff brought suit alleging negligence on the part of the bank. The court ultimately held that the bank did not owe plaintiff a duty of care as he was not a customer of the bank. *Id.* This case as well as the other cases cited by Defendant stand for the proposition that banks do not owe a duty to those with whom the bank has no relationship. *See Nat'l Union Fire Ins. Co. v. Allfirst Bank*, 282 F.Supp.2d 339, 345 (D.Md.2003) (finding no duty of care owed by bank to noncustomer); *City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.*, 166 N.J. 49, 764 A.2d 411, 418 (N.J.2001) (concluding that a bank cannot be liable to a plaintiff under a theory of negligence where the record is barren of any unique relationship between the plaintiff and the bank).

■ Plaintiff contends that "through the establishment and continued use and maintenance of the Fleet Fiduciary Account, [Plaintiff] was a customer of [Defendant]." (Doc. No. 6 at 9.) The Complaint clearly alleges that Plaintiff established and managed bank accounts with Defendant for Hamilton. (Compl.¶¶ 8, 9.) Plaintiff further argues that the account statements provided by Defendant (Doc. No. 2 Ex. C) show that Plaintiff was a customer of Defendant.[3] Based on these allegations,

---

**3.** Normally when deciding a motion to dismiss the district court only considers the allegations in the complaint. In *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), the Third Circuit determined that a district court may examine an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." The rationale for this exception is that "the

primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). In this instance, Defendant attached the bank rec-

Plaintiff argues that it is an issue of fact as to whether Plaintiff is a customer of the bank such that it is owed a duty of care.

The bank records attached to the Motion to Dismiss indicate that the bank accounts were titled "Hamilton Continuing Care Center Payroll Account," and "Hamilton Continuing Care Center." (Doc. No. 2 Ex. C.) The address on the accounts was:

Hamilton Continuing Care Center

Lock Box Account

C/O Hopsicomm Inc—Attn: Mart

41 Nth 3rd Street—Suite 200

Philadelphia Pa 19106–4508

(*Id.*) This address illustrates that Plaintiff was at a minimum, receiving the account statements and managing the accounts for Hamilton. We believe that this fact, along with the allegations in the Complaint, are sufficient to allow the inference that Plaintiff was either a customer of Defendant or had some contractual relationship with Defendant that may be further developed through discovery.

**Economic Loss Doctrine/Gist of the Action**

■ Next, Defendant argues that because Plaintiff's tort claims are based on a contractual duty, the negligence claims are barred by the "economic-loss doctrine," and the "gist of the action doctrine." Under Pennsylvania law, "courts are cautious about permitting tort recovery based on contractual breaches." *Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581 (Pa.Super.2003) (citing *Glazer v. Chandler,* 414 Pa. 304, 200 A.2d 416, 418 (1964)). Based on this notion, Pennsylvania courts have fashioned the "economic-loss rule," and the "gist of the action doctrine." *Id.* (citing *eToll, Inc. v. Elias/Savion Adver. Inc.,* 811

A.2d 10, 14 (Pa.Super.2002)). "[T]he economic-loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows from a contract.'" *Factory Market, Inc. v. Schuller Int'l Inc.,* 987 F.Supp. 387, 395 (E.D.Pa. 1997) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995)); *see also I & S Assocs. Trust v. LaSalle Nat'l Bank,* No. Civ. A. 99–4956, 2001 WL 1287522, at *3 (E.D.Pa. Oct. 23, 2001) (finding that "the economic loss doctrine bars a plaintiff from bringing a negligence action solely for economic losses absent physical injury or property damage") (citing *Ellenbogen v. PNC Bank,* 731 A.2d 175, 188 (Pa.Super.1999)).

■ The gist of the action doctrine is similar to the economic-loss doctrine in purpose. *See Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.,* 246 F.Supp.2d 394, 402 (E.D.Pa.2002) (stating that "[l]ike the economic loss doctrine, the gist of the action doctrine's purpose is 'maintaining the separate spheres of the law of contract and tort.'") (quoting *First Republic Bank v. Brand,* 50 Pa. D. & C.4th 329 (Pa.Com.Pl.2000)). Under Pennsylvania law, "the 'gist of the action doctrine' bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort." *Cortez v. Keystone Bank, Inc.,* No. Civ. A. 98–2457, 2000 WL 536666, at *8 (E.D.Pa. May 2, 2000). Again, the impetus for this rule is precluding "plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Blue Mountain Mushroom,* 246 F.Supp.2d at 402 (quoting *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 n. 8 (3d Cir.2002)).

---

ords for the bank accounts at issue to its Motion. (Doc. No. 2 Exs. C). Plaintiff discusses the bank records in its Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, (Doc. No. 6 at 10). For these reasons we will consider the account statements in deciding this motion.

The applicability of either of these doctrines turns on whether the basis of the plaintiff's allegations sound in contract or tort. The conceptual distinction between a breach of contract claim and a tort claim has been explained as follows:

> Although they derive from a common origin, distinct differences between civil actions for tort and contractual breach have been developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract *inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Pittsburgh Constr.*, 834 A.2d at 582 (citing *eToll*, 811 A.2d at 14). *See also Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir.2001) (holding that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts'") (quoting *Bash v. Bell Tel. Co.*, 411 Pa.Super. 347, 601 A.2d 825, 830 (Pa.Super.1992)).

■ Defendant argues that either the "economic-loss doctrine" is applicable to the instant case because this case involves claims for purely economic losses, or that the "gist of the action doctrine" applies because the instant action is based on a contractual duty rather than a social duty. We will apply the "gist of the action doctrine".[4]

The duties Plaintiff accuses Defendant of violating arise in contract, rather than in tort. The Complaint alleges that "[u]pon establishing the Fleet Fiduciary Accounts, an *implied contract* was entered into between Hospicomm and Fleet Bank." (Compl.¶ 9.) Thus, the plain-language of the Complaint suggests that the action sounds in contract law. Pennsylvania common law also supports the proposition that the duties a bank owes to its customers are created through contract rather than tort. In *Cortez v. Keystone Bank, Inc.*, NO. Civ. A. 98–2457, 2000 WL 536666, *1 (E.D.Pa. May 2, 2000), the plaintiff brought suit against a bank with which it had an open line of credit for breach of contract, negligence, gross negligence and fraud. The court dismissed the tort claims because it found that the "allegations of wrongful assessment of interest charges sound in contract and not tort. [The Bank's] duties to plaintiffs arose solely from the parties' agreement." *Id.* at *8.

Other Pennsylvania courts have also found that the duty a bank has to its customers is a contractual duty rather than a social duty. In *McGuire v. Shubert*, the court considered whether "a cause of action for a breach of a duty of confidentiality to a bank customer exists in the Commonwealth." 722 A.2d 1087, 1090 (Pa.Super.1998). The court first noted that "it is established in Pennsylvania that the legal relationship between a financial institution and its depositors is based on

---

4. While the economic-loss doctrine may very well apply here, we are wary of relying on the economic loss doctrine alone. In *Bohler–Uddeholm*, 247 F.3d at 104 n. 11, the court discussed but did not rely on the "economic-loss doctrine ... because that doctrine developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." *Id.* (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866–71, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Duquesne Light*, 66 F.3d at 618–20).

contract." *Id.* at 1091 (citing *First Fed. Savings & Loan Assoc. of Hazleton v. Office of State Treasurer,* 543 Pa. 80, 669 A.2d 914, 915 (1995)). The court went on to determine that "the duty on a bank . . . to keep a customer's bank account information confidential . . . is present as an implied contractual duty under Pennsylvania common law." *Id.* at 1091. *See also Heritage Surveyors & Eng'r, Inc. v. Nat'l Penn Bank,* 801 A.2d 1248, 1252–53 (Pa.Super.2002) (citing *McGuire* for the proposition that a bank has an affirmative duty to keep its customer's financial information confidential).

Plaintiff contends that, at this stage of the proceedings, it may seek alternative forms of relief under Fed.R.Civ.P. 8(e)(2).[5] *See Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1175 (3d Cir.1997); *Triple Crown of Am., Inc. v. Biosynth AG & Biosynth Int'l, Inc.,* No. Civ. A. 96–7476, 1997 WL 611621, at *8 (E.D.Pa. Sept. 17, 1997); *Atlantic Paper Box Co. v. Whitman's Chocolates,* 844 F.Supp. 1038, 1043 (E.D.Pa.1994). While Rule 8(e)(2) allows pleading alternative forms of relief, we are satisfied that any duty owed to Plaintiff in this matter flowed solely from contract. This conclusion is buttressed by Plaintiff's own allegation that it was Defendant's customer based on an implied contract. Thus we believe that the "gist of the action doctrine" applies in this case, and Plaintiff's tort claims must be dismissed.

### UCC Article 4

█ Plaintiff contends that Defendant violated various duties Defendant owed it under Article 4 of the UCC. Defendant contends that this claim should be dismissed because Article 4 does not apply to ATM transactions. Article 4, codified as 13 PA. CONS. STAT. §§ 4101–4111, was enacted to create "a uniform statement of the principal rules of the bank collection process. . . ." 13 PA. CONS. STAT. §§ 4101, Uniform Commercial Code Comment—1990 number 1. The statute defines the standard applicable to banks as:

> Action or nonaction approved by this division or pursuant to Federal Reserve regulations or operating circulars is the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this division, is prima facie the exercise of ordinary care.

13 PA. CONS. STAT. § 4103(c). This statutory language has been interpreted to mean that "banks come under the general obligations of the use of good faith and the exercise of ordinary care." *Id.* Uniform Commercial Code Comment—1990 number 4. *See also Frost Nat. Bank v. Midwest Autohaus, Inc.,* 241 F.3d 862, 871 (7th Cir.2001) ("Article 4 of the UCC (Banking Deposits and Collections) adopts the definition of good faith in Article 3, requiring 'honesty in fact and the observance of reasonable commercial standards of fair dealing.' ").

There is a dearth of case law regarding what a cause of action under Article 4 of

---

**5.** FED. R. CIV. P. 8(e)(2) states:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

the UCC entails. Defendant's sole argument is that Plaintiff's claim is insufficient because transactions related to the use of an ATM card are not covered by Article 4 of the UCC. Article 4 only applies to "items" as defined in 13 Pa. Cons. Stat. § 4104. Item is defined as "[a]n instrument or a promise or order to pay money handled by a bank for collection or payment. The term does not include a payment order governed by Division 4A (relating to funds transfers) or a credit or debit card slip." *Id.* Defendant argues that based on the definitions of "instrument," "promise," and "order" it is apparent that an ATM transaction is not contemplated by the definition of item. *See* 13 Pa. Cons. Stat. §§ 3014(b), 3014(a), 3013(a). Plaintiff contends that an ATM card replaces money, such that it can be considered an instrument as defined by the UCC.

There are no federal or state cases in Pennsylvania that address the extent to which Article 4 of the UCC covers electronic withdrawals of funds. Numerous cases in other jurisdictions have considered the question of whether Article 4 covers electronic fund transfers ("EFTs"). *See, e.g. Bradford Trust Co. v. Tex.-American Bank–Houston,* 790 F.2d 407, 409 (5th Cir.1986); *Evra Corp. v. Swiss Bank Corp.,* 673 F.2d 951, 955 (7th Cir.1982); *Security First Network Bank v. C.A.P.S., Inc.,* No. 01 C 342, 2002 WL 485352, *7 (N.D.Ill. Mar. 29, 2002); *Fernandes v. First Bank & Trust Co.,* No. 93 C 2903, 1993 WL 339286 (N.D.Ill. Sept. 3, 1993). Each of the cases that have considered the issue have found that the UCC does not apply to EFTs. The issue presently before us—whether Article 4 applies to electronic withdrawals—has not been thoroughly analyzed. The Supreme Court of Kansas in the case of *Sinclair Oil Corp. v. Sylvan State Bank* 254 Kan. 836, 869 P.2d 675 (1994), discussed an issue similar to the one currently before us. In *Sinclair Oil,* the plaintiff was paid for products it delivered by "making electronic debits" from its customer's bank account. On one such occasion, the defendant bank returned the debited funds to the customer's account because after the electronic debits the customer's account was left with insufficient funds. Plaintiff alleged that the return of the debited funds was late under the Article 4 of the Kansas Uniform Commercial Code. *Id.* at 677. Ultimately, the court was forced to consider whether electronic debits are excluded from UCC coverage. The court initiated its analysis by noting that other courts had excluded EFTs from UCC coverage because: "(1) electronic debits are not 'items' within the meaning of Article 4; (2) the UCC 'does not specifically address the problems of electronic fund transfers'; and (3) the UCC drafters never contemplated electronic transactions when developing the Code." *Id.* at 680 (internal citations omitted).

The court first analyzed what "item" meant under Article 4. An item is an "instrument." An "instrument" under the UCC is defined as a "negotiable instrument." A "negotiable instrument," is defined as " 'any writing' that was signed by the maker, containing an unconditional promise to pay a sum certain, payable on demand or at a definite time to order or to bearer." *Id.* at 680–81 (citing K.S.A. 84–3–104). The court went on to recognize that the 1990 statute adopting that definition identified the writings that complied with the section to include drafts, checks, certificates of deposit, and notes. "An EFT is not a writing and is not within the specific list of writings that are 'instruments.' " *Id.*

The court moved on to consider the intent behind the adoption of Article 4. It noted numerous ways in which the concept of electronic transfers is not contemplated

by the UCC. These reasons include: (1) Article 4A specifically excludes so called "debit transfers," where the order to pay is given by the person receiving payment;[6] (2) electronic fund transfers were not in the contemplation of the Article 4 drafters, as Article 4 is "a direct outgrowth of the American Bankers Association Bank Collection Code, drafted in the early 1920s to govern check collection; and (3) the ideas in Articles 3 and 4 of the UCC ... depend upon bankers looking at particular words and numerals on the face of a particular instrument. In the case of EFTs, the medium of communication is the computer ...." *Id.* at 681–82 (internal citations omitted).

Though the financial transactions at issue in this case are alleged unauthorized ATM withdrawals rather than electronic debits from one bank account sent to another, we are satisfied that the rationale of *Sinclair Oil* applies equally here. By its very definitions, Pennsylvania's adoption of Article 4 does not contemplate electronic withdrawals. The statute defines "item" as "[a]n instrument or a promise or order to pay money handled by a bank for collection or payment. The term does not include a payment order governed by Division 4A (relating to funds transfers) or a credit or debit card slip." 13 PA. CONS. STAT. § 4104. In the instant case, Martinez allegedly withdrew funds using a Visa ATM card issued by Defendant. As in *Sinclair Oil,* Article 4 was meant to apply only to traditional written instruments, rather than electronic means of transferring and withdrawing funds. Nowhere in Article 4 are ATM withdrawals discussed. Rather, a review of the text supports the conclusion that Article 4 was meant to apply to checks and traditional, written, monetary instruments.

Our conclusion that Article 4 does not cover ATM withdrawals is buttressed by the federal law in this area. While focusing on Defendant's liability under Article 4 of the UCC, neither party addressed the fact that Congress enacted legislation covering ATM withdrawals when it enacted the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693. The statute was designed to specifically cover withdrawals made from an ATM. *See* 15 U.S.C. § 1693a (defining "electronic fund transfer" to mean "any transfer of funds ... which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes ... automated teller machine transactions...."). *See also United States v. Goldblatt,* 813 F.2d 619, 622 (3d Cir.1987) (criminal case discussing applicability of EFTA to ATM withdrawals). Moreover, the EFTA enacted a defined process for a consumer to bring a claim against a bank for an alleged "unauthorized fund transfer." *See* 15 U.S.C. §§ 1693c-h.

█ The EFTA has an anti-preemption clause specifically allowing states to enforce consumer credit protections that go beyond the protections of the EFTA that are not inconsistent with EFTA. 15 U.S.C. § 1693q; *Metrobank v. Foster,* 193 F.Supp.2d 1156, 1159 (S.D.Iowa 2002). Article 4A of the UCC specifically states

---

**6.** Article 4A of the UCC applies to "fund transfers" to banks. 13 PA. CONS. STAT. § 4A104.

that "this division does not apply to a funds transfer any part of which is governed by the [EFTA]." 13 Pa. Cons. Stat. § 4A1008. *See also* 13 Pa. Cons. Stat. § 4A1008, Uniform Commercial Code Comment ("The effect of section 4A–108 is to make Article 4A and EFTA mutually exclusive."). Though this text seems to suggest that in Pennsylvania the EFTA is the exclusive remedy for claims relating to ATM transactions, nowhere in the statute are ATM transactions explicitly removed from the application of Article 4. Even assuming, *arguendo*, that Article 4 of the UCC does in fact apply to ATM transactions, we believe it still would be preempted by the EFTA. The EFTA constructs a process for consumers wishing to contest unauthorized transfers, with clear burdens that must be satisfied in any suit.[7] *See* 15 U.S.C. §§ 1693c-h. Under the circumstances, we conclude that in Pennsylvania, a cause of action for an unauthorized use of an ATM card should be brought under the EFTA, rather than Article 4 of the UCC.

## Conclusion

Based upon the foregoing, Plaintiff's tort claims must be dismissed under the "gist of the action doctrine" because these claims sound in contract rather than tort. In addition Plaintiff's cause of action

against Defendant for approval of unauthorized fund transfers is not cognizable under Article 4 of the UCC. Plaintiff has requested leave to amend the Complaint if Defendant's Motion is granted. We will grant Plaintiff leave to amend pursuant to Fed.R.Civ.P. 15(a).

An appropriate Order follows.

## ***ORDER***

AND NOW, this 30th day of September, 2004, upon consideration of Defendant Fleet Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), (Doc. No. 2), and all documents in support thereof, and opposition thereto, it is ORDERED that Defendant's Motion to Dismiss is GRANTED. Plaintiff Hospicomm, Inc., is GRANTED leave to file an amended Complaint within thirty (30) days of the date hereof.

IT IS SO ORDERED.

---

7. The EFTA created reporting responsibilities by consumers that must be satisfied to bring a claim for an unauthorized fund withdrawal. The pertinent text states:

Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement ... any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title. In addition, reimbursement need not be made to the consumer for losses which the financial in-

stitution establishes would not have occurred but for the failure of the consumer to report any loss or theft of a card or other means of access within two business days after the consumer learns of the loss or theft ... but the consumer's liability under this subsection in any such case may not exceed a total of $500, or the amount of unauthorized electronic fund transfers which occur following the close of two business days (or such longer period) after the consumer learns of the loss or theft but prior to notice to the financial institution under this subsection, whichever is less.

15 U.S.C.A. § 1693g.